BELL & HOWELL: MAMIYA CO.,
Plaintiff-Appellee,

v.

MASEL SUPPLY CO. CORP.,
Defendant-Appellant.

No. 1086, Docket 82–7867.

United States Court of Appeals,
Second Circuit.

Argued March 28, 1983.

Decided Oct. 4, 1983.

Nathan Lewin, John F. Savarese, Miller, Cassidy, Larroca & Lewin, Richard H. Stern, Stern & Robert, of Counsel, Washington, D.C., Kenneth R. Umans, Nims, Howes, Collison & Isner, New York City, for defendant-appellant.

Robert E. Wagner, Chicago, Ill. (Robert E. Browne, Alan L. Barry, Linda A. Kuczma, Wallenstein, Wagner, Hattis, Strampel & Aubel, Chicago, Ill., John E. Kidd, Joseph J.C. Ranalli, Robert M. Kunstadt, Pennie & Edmonds, New York City, Michael W. Havrilla, Osawa & Co., Mount Prospect, Ill., of counsel), for plaintiff-appellee.

Milton A. Bass, Jacob Laufer, Steven R. Trost, Howard I. Schneider, Bass, Ullman & Lustigman, New York City, for American Free Trade Ass'n and Importers Federation of America as amici curiae.

Thompson & Knight, Dallas, Tex., Fried, Frank, Harris, Shriver & Jacobson, New York City, for Plastics Mfg. Co. as amicus curiae.

William F. Sondericker, Mary C. Mone, Olwine, Connelly, Chase O'Donnell & Weyher, New York City, for Progress Trading Co. as amicus curiae.

Gail T. Cumins, Peter Jay Baskin, Ned H. Marshak, Sharretts, Paley, Carter & Blauvelt, P.C., New York City, for Sanyo Elec. Inc. as amicus curiae.

Steven P. Kersner, David R. Amerine, Stein, Shostak, Shostak & O'Hara, Sheldon I. London, James R. Atwood, Eugene A. Ludwig, Scott D. Gilbert, Margaret R. Alexander, Covington & Burling, G. Hamilton

Loeb, Paul, Hastings, Janofsky & Walker, Washington, D.C., for Trademark Group of the American Ass'n of Exporters and Importers, American Watch Ass'n, Bojorquez Mexican Food Coalition, and Jewelers of America, Inc. as amici curiae.

Richard H. Abbey, Chief Counsel, U.S. Customs Service, William F. Baxter, Asst. Atty. Gen., Abbott B. Lipsky, Jr., Barry Grossman, Stephen F. Ross, Dept. of Justice, Washington, D.C., for the U.S. as amicus curiae.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

Masel Supply Co. Corp. (Masel) appeals from an order of the United States District Court for the Eastern District of New York, Edward R. Neaher, *Judge,* entered October 1, 1982, granting a preliminary injunction in favor of Bell & Howell: Mamiya Co. (BHMC)[1] and enjoining Masel from distributing products bearing certain trademarks and from engaging in certain related activities. Masel alleges that the district court erred in issuing a preliminary injunction against it. The principal issue addressed by this court is a threshold question of whether the district court properly applied the standard in this circuit for granting a preliminary injunction. For the reasons set forth below, we vacate the grant of the preliminary injunction and remand for further proceedings.

## I. FACTS

A. *Distribution of Mamiya Cameras in the United States*

BHMC is a Delaware corporation and is the registered owner of three "MAMIYA"

trademarks in the United States: "MAMIYA" (No. 785,979); "MAMIYA–SEKOR" (No. 795,165); and "MAMIYA C" (No. 812,970). It imports and sells a variety of photographic equipment under these marks, including so-called "medium format photographic equipment."[2] All of this equipment is manufactured in Japan by the Mamiya Camera Co. (Mamiya Co.), a Japanese corporation, which sells the equipment to its exclusive worldwide distributor, J. Osawa & Co. Ltd. (Osawa Japan), a Japanese corporation,[3] which, in turn, sells the equipment to BHMC. By oral agreement between Osawa Japan and BHMC, the latter is the exclusive authorized distributor of MAMIYA cameras in the United States. BHMC also markets Bell & Howell and Osawa photographic equipment. BHMC claims to have spent in excess of five million dollars in national and local promotion and advertising of the products it marketed in 1980, but claims to have reduced that figure in 1981 due to the depressed economy and the "drastic adverse effect of 'so-called genuine' goods importation."

Masel, a New York corporation whose business office is located in Brooklyn, New York, is a wholesaler of cameras. Since early 1981, Masel has been engaged in the business of importing MAMIYA medium format cameras, lenses, and accessories by purchasing them from an international dealer in Hong Kong, who, in turn, had purchased them lawfully from Osawa Japan. According to Masel, prior to importing any MAMIYA products, it inquired of the United States Customs Service whether the MAMIYA trademark was registered with Customs and was informed that the

---

1. In January, 1982, BHMC's name was changed to "Osawa & Co." Nevertheless, this opinion will continue to refer to appellee as "BHMC." Osawa Precision Industries, Inc., a sister company and wholly-owned subsidiary of Osawa Japan, recently acquired 51% ownership of BHMC. Osawa Japan retains 93% ownership of BHMC through Osawa USA and Osawa Precision Industries, Inc.

2. A medium format camera is used principally by professional photographers and sophisticat-

ed amateurs, and utilizes 120/220 film. Appellant alleges that there are no United States manufacturers of medium format single lens reflex cameras and that only five foreign manufacturers compete in the medium format line.

3. By contract with Mamiya Co., Osawa Japan holds the exclusive right to distribute MAMIYA medium format equipment worldwide, except in Japan, where Mamiya Co. distributes its own goods.

mark was not registered. Thus, Masel asserts it appeared that MAMIYA cameras could be imported without restriction. After importation, Masel apparently sold the photographic equipment, as received and at prices substantially below those charged by BHMC, to retail dealers in New York and other United States metropolitan areas. The district court preliminarily found that the equipment sold by Masel was made by Mamiya Co. and was distributed by Osawa Japan.

### B. Corporate Relationship—Control of BHMC

Osawa USA, a New York corporation which is a wholly owned subsidiary of Osawa Japan, currently owns 93% of BHMC's stock. Mamiya Co. owns the remaining 7%.

There is no formal written agreement between Osawa Japan and BHMC. Rather, BHMC orders products from Osawa Japan by individual purchase orders. An oral agreement does, however, exist. Under the terms of the oral agreement, BHMC is the exclusive distributor of MAMIYA products in the United States and BHMC is to purchase all of its requirements from Osawa Japan.

Osawa Japan influences BHMC's business in MAMIYA goods bearing the above-mentioned trademarks in several important areas: (1) packaging of the product; (2) warranty; and (3) price.

#### 1. Packaging

The MAMIYA brand products purchased by BHMC from Osawa Japan are not repackaged by BHMC. The only change in the packaging made by BHMC is that it affixes a label to the product indicating a "part number reference." An instruction booklet is placed in the package in Japan by Mamiya Co., as is a warranty card.

#### 2. Warranty

BHMC provides a limited one-year written warranty with the MAMIYA products that it markets. Also, BHMC determines the type of warranty that it wishes to offer on the MAMIYA products. BHMC then forwards its request for inclusion of printed warranty cards in the products it orders to Osawa Japan, which in turn requests of Mamiya Co. that such inclusions be made. It appears that Osawa Japan has no input regarding the terms of the warranty. Under the terms of the warranty, photographic equipment in need of repair is to be sent to BHMC. Mamiya Co. reimburses BHMC for repair work BHMC does under the warranty on MAMIYA products, although the record is not clear as to whether this reimbursement is partial or full.

#### 3. Price

Osawa Japan does not set BHMC's published selling prices of the MAMIYA products BHMC markets. Osawa Japan does, however, set BHMC's purchase cost, and BHMC pays Osawa Japan directly for all products it receives from Osawa Japan.

### C. District Court Proceedings

A complaint was filed by BHMC on July 28, 1981.[4] The complaint sought, among other things, to "preliminarily and permanently [enjoin]" Masel from using the allegedly infringing marks in connection with "advertising, offering for sale and/or sale of any photographic products unless specifically authorized by BHMC," or otherwise infringing the marks. Masel counterclaimed for false designation of origin under 15 U.S.C. §§ 1064(c), 1125(a) (1976); cancellation of BHMC's MAMIYA trademarks under section 37 of the Trademark Act of 1946, 15 U.S.C. § 1119 (1976); violation of section 73 of the Wilson Tariff Act, 15 U.S.C. § 8 (1976); and violation of section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1 (1976). After a hearing, in a

**4.** The complaint alleged that Masel was guilty of infringement of certain United States trademarks in violation of 15 U.S.C. §§ 1114(1), 1116, 1117, 1118 and 1121 (1976); unfair competition in violation of 15 U.S.C. §§ 1121 and 1125(a) (1976); common law unfair competition; dilution in violation of N.Y.Gen.Bus.Law § 368–d (McKinney 1968); and conspiracy to commit trademark infringement under the laws of the State of New York.

decision dated September 30, 1982, the district court granted a preliminary injunction.[5] The court's opinion focused on cases pertaining to importation into the United States of goods with infringing marks. The district court framed the issue as "whether an American company [BHMC], which is engaged on an exclusive basis in the business of importing and selling trademarked goods of foreign manufacture under United States trademark rights owned by it, may enjoin another's [Masel's] unauthorized, competitive sale in the United States of the same identically trademarked goods, which were made and placed in the stream of international commerce by the foreign manufacturer [Mamiya Co.], who did not intend that such goods be sold here." *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 548 F.Supp. 1063, 1064–65 (E.D.N.Y.1982). The court discussed cases construing section 27 of the Trademark Act of 1905, the predecessor to section 42 of the Lanham Act, and section 526 of the Tariff Act of 1930. The court stated that it was deciding this case "upon the fundamental question of trademark law, whether or not the defendant's use of the MAMIYA marks on medium format photographic equipment is likely to cause confusion with the plaintiff's use of the mark." *Id.* at 1079. The court concluded that "[i]t is clear that such a substantial likelihood of confusion exists in this case." *Id.*

## II.  DISCUSSION

To obtain a preliminary injunction in this circuit, a party must make "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *see also Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78–79 (2d Cir.1981) (same standard applica-

ble in trademark infringement cases).  The moving party has the burden of proving each of these elements.  *Robert W. Stark, Jr., Inc. v. New York Stock Exchange, Inc.*, 466 F.2d 743, 744 (2d Cir.1972) (per curiam).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."  11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 431 (1973) (footnote omitted). *Cf. Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975) ("traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury"); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 56, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975) ("irreparable harm necessary to support an injunction"); *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974) (" 'basis of injunctive relief has always been irreparable harm and inadequacy of legal remedies' ") (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959)); *Greenwald v. Whalen*, 609 F.2d 665, 668 n. 2 (2d Cir.1979) ("plaintiff must also show irreparable injury").

In general, the standard of appellate review of the grant of a preliminary injunction is "whether the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion."  *Doran*, 422 U.S. at 932, 95 S.Ct. at 2568; *see Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 35 (2d Cir.1962).

■ Applying these principles to the instant case, we hold that the district court's grant of preliminary injunctive relief must be vacated.  As stated above, the district court concluded that "a substantial likelihood of confusion exists in this case." *Bell & Howell: Mamiya Co.*, 548 F.Supp. at

**5.** A temporary restraining order had been issued originally on July 30, 1981; it remained in effect by consent of the parties until the preliminary injunction was issued.

1079. However, there is an absence of factual support in the district court's opinion for this conclusion which apparently related to the irreparable injury prong of the preliminary injunction test. Whether irreparable injury exists is a determination to be made in the first instance by the district court. On the basis of the present record, irreparable injury may well not be present herein since there would appear to be little confusion, if any, as to the origin of the goods and no significant likelihood of damage to BHMC's reputation since thus far it has not been shown that Masel's goods, which have a common origin of manufacture with BHMC's goods, are inferior to those sold by BHMC and are injuring BHMC's reputation. Further, it does not appear that the lack of warranties accompanying MAMIYA cameras sold by Masel amounts to irreparable injury, since the consumer can be made aware by, among other things, labels on the camera boxes or notices in advertisements as to whether the cameras are sold with or without warranties. Thus, less drastic means would appear to be available to avoid the claimed confusion. Further, should there be an ultimate decision in BHMC's favor, it could seek relief through a permanent injunction, an accounting, or an award of damages. For purposes of our review, it suffices that thus far irreparable injury has not been demonstrated, and, consequently, it was an abuse of discretion for the district court to issue the preliminary injunction.

■ Our recent decision in *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 316–17 (2d Cir.1982), is not to the contrary. There we emphasized that the Lanham Act plaintiff bears the same burden as other litigants in seeking interlocutory relief, but that the peculiar difficulty of proving injury from false advertising must be taken into account by the district court. The plaintiff complaining of false advertising must nevertheless show that "a significant number of consumers would be likely to be misled." *Id.* at 317. On the facts of the present case, BHMC has not shown that the sale of the subject camera equipment by another distributor is likely to cause any consumer to be misled about the product he or she purchases.

■ The failure of the district court to discuss, and of BHMC to prove, the irreparable injury prong of the preliminary injunction test obviates the need to determine whether a substantial likelihood of trademark infringement under the Lanham Act, 15 U.S.C. § 1124 (Supp. V 1981), has been demonstrated or whether a violation of section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526 (1976 & Supp. V 1981), has been shown. We believe that these questions are directed at the ultimate merits of the controversy. The Supreme Court has warned, "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). To the extent that the district court has discussed such issues, we note that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."

### III. CONCLUSION

We vacate the order issuing the preliminary injunction and remand the case to the district court for further proceedings.