**SATELLITE TELEVISION OF NEW YORK ASSOCIATES and Riverbay Corporation, Plaintiffs,**

v.

**William B. FINNERAN, Jerry A. Danzig, Brian A. Luddy, and Theodore E. Mulford, as Members of the New York State Commission on Cable Television, Defendants.**

No. 83 Civ. 6738 (GLG).

United States District Court,
S.D. New York.

Feb. 15, 1984.

Generally, challenges to the refusal of a Stay of Deportation pending the processing of a visa petition, or to enable the deportee to remain in the United States while his or her application for an immigrant visa is processed by the American Consul abroad have been rejected. 2 C. Gordon & H. Rosenfield, Immigration Law and Procedure § 815c at 8–134 (1983).

Moore, Berson, Lifflander & Mewhinney, New York City, for plaintiffs; Earle K. Moore, Matthew L. Lifflander, Michael R. Sonberg, David J. Finnegan, Patricia L. Wager, New York City, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Peter Bienstock, John W. Corwin, John Reichman, Asst. Attys. Gen., New York City, of counsel.

Frederick A.O. Schwarz, Jr. Corp. Counsel of City of New York, New York City, for movant for intervention; Lorna B. Goodman, Martin C. Aronchick, Asst. Corp. Counsel, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

In this action, plaintiffs Satellite Television of New York Associates ("Satellite") and Riverbay Corporation ("Riverbay") seek an order from the Court enjoining the defendants, four members of the New York State Commission on Cable Television (the "NYSCCT"),[1] both from enforcing the NYSCCT's recent cease and desist orders restraining Satellite from continuing its construction of a Satellite Master Antenna Television system, or SMATV system, at Co-op City in the Bronx, New York, and from taking any further actions that might interfere with the construction of that SMATV system (the "Riverbay System").[2] Now, in support of a motion for a preliminary injunction, the plaintiffs set forth three arguments for so enjoining the de-

1. Although the caption of the complaint indicates that the four defendants are being sued "individually," as well as in their official capacity as members of the NYSCCT, the Court assumes that the plaintiffs' intention is to sue the defendants only in the latter capacity. The Court makes this assumption both because the plaintiffs have tacitly conceded its validity by not responding to the defendants' brief on this point and because the Court has uncovered in the complaint and other submissions no suggestion that any defendant is being sued in anything but his official capacity.

2. Specifically, in the Complaint and Supplemental Complaint, the plaintiffs set forth ten counts. In the first and sixth counts, they allege that the issuance and enforcement of temporary and permanent cease and desist orders by the NYSCCT runs counter to the Federal Communication Commission's preemption of authority to regulate SMATV systems. In the second and seventh counts, the plaintiffs allege in rather conclusory terms that Article 28 of New York's Executive Law, as it is being applied to them in this matter, violates the first amendment of the U.S. Constitution by abridging the plaintiffs' freedom to receive and distribute SMATV signals. In the third and ninth counts, the plaintiffs claim that they will be irreparably harmed unless the Court enjoins enforcement of the cease and desist orders and that they have no adequate remedy at law. In the fourth and tenth counts, the plaintiffs claim that the defendants acted outside of the authority granted them under New York's Executive Law by attempting to regulate a system which is not an operating cable television system and by depriving them of various procedural safeguards including a fair hearing. In the fifth count, the plaintiffs claim that the actions and statements of certain New York State officials estop the defendants from interfering with the installation and operation of the Riverbay System. Finally, in the eighth count, the plaintiffs allege that the defendants violated the plaintiffs' fourteenth amendment rights by acting in an arbitrary and capricious manner.

fendants: first, that the NYSCCT lacked the authority to issue the relevant cease and desist orders because such authority has been preempted by the Federal Communications Commission (the "FCC"); second, that the NYSCCT's actions are prohibited by the first amendment of the United States Constitution; and third, that the NYSCCT lacks authority under Article 28 of New York's Executive Law to issue orders regulating the Riverbay System because it was not an operating cable television system.

The defendants respond by opposing the plaintiffs' motion for preliminary injunction and by moving for dismissal of the action. The defendants argue: first, that the FCC has not preempted New York's power to regulate a cable television system such as the Riverbay System; second, that the plaintiffs have failed to state a first amendment claim; third, that the NYSCCT is empowered to regulate such a cable television system before it goes into operation; and finally, that no actions taken by any officials of the State of New York were, as the plaintiffs allege, of such a nature as to estop the NYSCCT from enforcing its cease and desist orders or from taking any future actions to regulate Satellite's design, construction, and operation of the Riverbay System. In addition, the City of New York (the "City") has moved to intervene as a defendant on the grounds that its interests in the regulation of cable television systems in the Bronx requires that it be a party to this action.

For reasons discussed below the Court concludes that it must grant the plaintiffs' motion for preliminary injunction with respect to the NYSCCT's cease and desist orders and deny the defendants' motion to dismiss and the City's motion to intervene.

FACTS

Plaintiff Satellite is a partnership established for the purpose of installing and operating the Riverbay System at Co-op City, which is a cooperative housing development of approximately 50,000 tenant co-

operators. Pursuant to Satellite's contract with plaintiff Riverbay, which owns and operates Co-op City, Satellite is to install a system that will receive and distribute satellite television signals and provide a better security and communications system connecting the many buildings that make up Co-op City. This contract was entered into at the end of 1982 and became effective in early 1983. Thereafter, Satellite commenced the planning and construction of the Riverbay System.

In relation to this dispute, the physical aspect of Co-op City that takes on particular significance is the configuration of public streets and highways that enter or cross Co-op City. Co-op City can be thought of as two self-contained sections separated from one another by the Hutchinson River Parkway (the "Parkway"). The larger section lies to the north of the Parkway and the smaller to the south. Each of these sections is either partially or entirely circumscribed by a smaller perimeter street and entered at a number of points by short loops and cul-de-sacs, which do not traverse the entire section. Thus, the only public highways that cross a part of Co-op City in such a way as to cut off some residents from others are the Parkway and the two perimeter streets.

Under the present plan for the Riverbay System, each of the two sections of Co-op City will have its own receiving antenna. Because of the placement of these two antennae and the configuration of public streets in and around Co-op City, there will be no absolute need to place television cables over or under any public thoroughfare in order to distribute satellite signals to the residents in either of the two sections. Rather, it will be possible for the cables from the receiving antenna in each section to run only to the residences located within that section and hence avoid crossing any streets.[3]

The same, however, cannot be said of the optional aspect of the Riverbay System

---

**3.** The cables within either section apparently can be laid so that they do not cross any of the short loops or cul-de-sacs.

that is intended to provide local programming channels and an improved security system. For those purposes, it appears that signals will have to be transmitted under, or over, at least the Parkway and the perimeter streets. Presently, though, the means of transmission for these signals and the time when such means will be installed are undetermined. (Indeed, Riverbay apparently has until October 8, 1987, to elect to exercise its option of having Satellite install these secondary aspects of the system. *See* Defendants' Exhibit A at 59 & 78.) Yet, how and when these optional services are to be provided is crucial in this dispute because these factors may be determinative of the ultimate question now before this Court, namely: whether the NYSCCT had, or has, jurisdiction to regulate the Riverbay System.

On August 24, 1983, the NYSCCT clearly believed that it did have jurisdiction, for on that date it issued a temporary order for Satellite to cease and desist construction and an order to show cause why a permanent cease and desist order should not be issued. These orders were based upon the NYSCCT's conclusions that an on-site inspection at Co-op City had revealed the construction of a "cable television system," as defined under Article 28 of New York's Executive Law, N.Y.Exec.Law § 812(2) (McKinney 1982),[4] and that such system had not been franchised by the NYSCCT, as required under N.Y.Exec.Law § 819(1) (McKinney 1982),[5] or granted a confirmation of franchise, as required under N.Y. Exec.Law § 821(1) (McKinney 1982).[6]

A hearing followed on September 6, 1983, which led to the issuance of a report by the presiding hearing officer on September 21, 1983. In his report, the hearing officer concluded as a matter of law that the system being constructed was a "cable television system," as that phrase is defined under Article 28, and that, whether or not Satellite's system might also be denominated a "SMATV" or "private cable system,"[7] the NYSCCT had jurisdiction to regulate the system because there had been no federal preemption of jurisdiction over SMATV systems. Plaintiff's Supplemental Reply Affidavit, Exhibit A, Report of Hearing Officer at 2.[8] Primarily on the basis of these two conclusions, the hearing officer recommended to the NYSCCT that

---

4. Section 812(2) provides in relevant part:

    (2) "Cable television system" shall mean any system which operates for hire the service of receiving and amplifying programs broadcast by one or more television or radio stations or any other programs originated by a cable television company or by any other party, and distributing such programs by wire, cable, microwave or other means, whether such means are owned or leased, to persons in one or more municipalities who subscribe to such service. Such definition does not include:
    (a) any system which serves fewer than fifty subscribers; or
    (b) any master antenna television system.

5. Section 819(1) provides:

    Notwithstanding any other law, no cable television system, whether or not it is deemed to occupy or use a public thoroughfare, may commence operations or expand the area it serves ... unless it has been franchised by each municipality in which it proposes to provide or extend service.

6. Section 821(1) provides:

    [N]o person shall exercise a franchise, and no such franchise shall be effective, until the commission has confirmed such franchise.

7. To distinguish in layman's terms a cable television system from a SMATV, or private system, it is helpful to think of the former as a system which distributes signals by means of a coaxial cable and the latter as a particular type of cable television system involving both a Satellite receiving antenna to receive television signals and cables to distribute them, all of which are located upon commonly owned property.

8. As stated in the report, the hearing officer's pertinent conclusions of law were as follows:

    1. The telecommunication system being constructed at Co-op City in the Bronx is a "cable television system" as such term is defined in section 812(2) of the Executive Law, notwithstanding that such system may also be denominated as a "Satellite Master Antenna Television System," "SMATV," "private cable system," or otherwise.

    \* \* \* \* \* \*

    (3) There has been no federal preemption of "SMATVs," "private cable systems," or "cable television systems" which precludes State enforcement of article 28 of the Executive Law.

    Plaintiff's Supplemental Reply Affidavit, Exhibit A, Report of Hearing Officer at 2.

its temporary cease and desist order be made permanent. *Id.* at 3.

Of the greatest importance for this Court's purposes, the hearing officer's report contains no findings of fact that might help to answer the crucial question of whether signals would have to be transmitted across public thoroughfares. His decision not to consider this question appears to have been premised upon his assumption that whether or not public thoroughfares were crossed had no bearing on the question of whether the Riverbay System was a cable television system over which the NYSCCT had jurisdiction. *Id.* at 2. That assumption, in turn, was premised upon his view of the law that the federal government had not preempted state and local regulation of SMATV systems, which he obviously viewed as being the same as regular cable television systems, at least for jurisdictional purposes. Indeed, the only factual findings explicitly made by the hearing officer were that Satellite and Riverbay had a contract and that construction of a telecommunications system pursuant to that contract had commenced sometime before August 3, 1983. *Id.* at 1–2.

On the basis of the hearing officer's report, the NYSCCT issued a permanent cease and desist order on September 23, 1983. It is the defendants' enforcement of that order, as well as any future regulation of the Riverbay System, that Satellite and Riverbay seek to enjoin.

DISCUSSION

Upon review of the parties' submissions, the Court finds that it need consider only the first issue raised by both the plaintiffs' motion for preliminary injunction and the defendants' motion to dismiss, that is whether the NYSCCT had jurisdiction to issue the cease and desist orders. The Court's conclusion at this time is that either the NYSCCT did not have such jurisdiction or that, at the very least, it and the hearing officer premised their finding of jurisdiction upon inadequate findings of fact and an incorrect conclusion of law.

The initial and critical assumption made by the hearing officer in his report, the NYSCCT in its decisions, and the defend-ants in their papers is that the federal government has not preempted the state and local authority to regulate SMATV systems. *See, e.g.,* Plaintiff's Supplemental Reply Affidavit, Exhibit A, Report of Hearing Officer at 2; Defendant's Memorandum of Law in Support of Their Motion to Dismiss, at 10–17. This assumption, however, is completely invalid. The FCC in *In re Earth Satellite Communications, Inc.,* FCC 83–526 (Adopted Nov. 8, 1983; Released Nov. 17, 1983), recently made explicit that which it believed was clearly implied, namely, that it had preempted "state and local regulation of SMATV systems that [has] the effect of interfering with, delaying, or terminating interstate and federally controlled communications services." *Id.* at 12.

While *Earth Satellite* was issued after the initial papers in support of these motions had been submitted to the Court, additional time was given before oral argument for all parties to address the effect of the FCC's decision upon this action. Implicit in the brevity of the papers subsequently filed is a recognition that the effect is very great indeed. The defendants concede that if the Riverbay System involved either one building or a group of buildings situated on land under common ownership and not traversed by public thoroughfares that the NYSCCT would probably have no jurisdiction to regulate the system. The plaintiffs, of course, go further and argue that the factual similarity between *Earth Satellite* and this case is so great that the question of preemption of state and local jurisdiction over the Riverbay System is answered once and for all by the FCC's decision.

The Court, while it believes that the FCC's decision has a greater impact than is conceded by the defendants, cannot go as far as the plaintiffs would have it go. *Earth Satellite* must not be read as a statement that the federal government has preempted all state and local regulation of SMATV systems. In the first place, the opinion is not meant to be applied to SMATV systems that are not under common ownership, control or management.

*Id.* at 2 n. 3. Nor should the opinion be read as a pronouncement that all state and local regulation of SMATV systems is precluded. *Id.* at 10. State and local governments clearly may exercise "jurisdiction over certain elements of an SMATV operation that properly may fall within [their] authority, such as zoning or public safety and health, provided the regulation in question is not undertaken as a pretext for the actual purpose of frustrating achievement of the preeminent federal objective." *Id.* In particular, it is clear that state and local governments have the authority to regulate any SMATV system that crosses or makes use of public streets and rights of way. *See id.* at 11–12 and authorities cited therein.

The defendants' problem, however, is that they cannot claim in this forum that public streets and rights of way will be crossed by the Riverbay System when the Court has before it no finding of fact by the hearing officer or the NYSCCT to support that claim. Lacking such a finding, the hearing officer's report and the NYSCCT's orders appear to be based on nothing more than a sweeping conclusion of law that there has been no federal preemption of state and local authority to regulate SMATV systems. This conclusion no longer being supportable, if it ever was, the Court has no choice but to rule that the hearing officer and the NYSCCT failed to establish facts upon which a proper finding of state and local jurisdiction could be based.

Having failed to properly establish the NYSCCT's jurisdiction to issue the orders in dispute here, the defendants are obviously in no position to argue that they acted properly in their capacity as commissioners or that the plaintiffs' preemption claims should be dismissed. Indeed just the opposite is true, and the Court has every reason, therefore, to be favorably disposed to grant the plaintiffs' motion for preliminary injunction.

Before doing so, however, the Court should give in greater detail its reasons for granting such an injunction. As the Second Circuit has recently held, before a party can obtain a preliminary injunction, it "must make 'a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).

Most importantly, the moving party must make the initial showing of irreparable harm. Here, such a showing is readily made. As was brought out in the papers and during oral argument, Satellite has been faced with a choice of, on the one hand, complying with the cease and desist orders and thereby constructively giving up on the Riverbay project[9] or, on the other hand, disobeying the orders, continuing construction, and incurring a fine of $2,000 a day, which could quickly amount to a sum greater than any profits expected to be recovered from the project. If Satellite chooses the first alternative, it guarantees itself an enormously burdensome, if not fatal, delay; if it chooses the latter alternative, it runs an excessive risk of losing much, if not all, of its investment. In the meantime, the official cable television franchisee for the Bronx, Cablevision Systems New York City Corporation, is permitted to continue, without competition, the expansion of its cable television system into Co-op City.

Given this situation, it is obvious that however Satellite reacts to the cease and desist orders, it has been unjustifiably placed in a position so disadvantageous as to put the entire Riverbay System at risk. Indeed, the situation appears to be very

**9.** Earlier efforts by Satellite to obtain a franchise from the NYSCCT met with no success, and there is no evidence to suggest that a franchise will be granted in the future. Hence, the plaintiffs' compliance with the permanent cease and desist order is equivalent to their abandonment of the Riverbay System.

similar to that in the *Earth Satellite* case, where the FCC's holding of federal preemption came so long after an earlier state court upholding of a New Jersey cease and desist order that development of the SMATV system in question ultimately was precluded because the officially sanctioned and franchised competitor had in the meantime installed another system. *See* Plaintiffs' Supplemental Reply Memorandum, Appendix A, *Multichannel News*, Nov. 21, 1983 edition at 22. Thus, there can be little question that there is a significant risk of irreparable harm if a preliminary injunction is not issued at this time.

In addition, the plaintiffs have clearly shown both a likelihood of success on the merits and a balance of hardships tipping in their favor. As to the likelihood of success on the merits, there is really no need to add more to what has already been said; there is presently a significant probability that the plaintiffs will succeed with their most critical claims, those concerning the FCC's preemption of the authority to regulate SMATV systems in general and the Riverbay System in particular, and thereby obtain the full injunctive relief that is sought in this action. Furthermore, when one turns to a balancing of the hardships involved, one finds them tipping decidedly in the plaintiffs' favor. Not only is Satellite being forced to bear a tremendous, if not overwhelming, economic burden, but also the public has been let down by the actions of the NYSCCT, both in the broad sense of having an agency not properly establish its jurisdiction before taking an action and in the narrow sense of having at least a segment of the public, the residents of Co-op City, deprived of the servic-

es to be provided by this SMATV system. To counter this, the defendants can offer little more than the same economic argument that they presented to the FCC in *Earth Satellite, supra,* at 4–5, i.e., that unless SMATV systems are locally regulated, regular cable franchises will not be able to successfully compete because they will be deprived of the more well to do customers who can afford private cable systems while being required to service customers of the lower economic spectrum. That argument was soundly rejected by the FCC in *Earth Satellite, supra,* at 7–9, and this Court rejects it as well. As the FCC pointed out in its decision, whatever merit there may be to the NYSCCT's argument, it is more than matched by the public interest in not having state administrative agencies placing obstacles in the path of the development and deployment of the new technologies offered by SMATV systems. *Id.* at 10.

CONCLUSION

In sum, there is every reason to grant the plaintiffs' motion for a preliminary injunction and to deny the defendants' motion to dismiss.[10] Accordingly, the Court enjoins the defendants from enforcing the cease and desist orders in question and from taking any other action to regulate the Riverbay System unless and until the NYSCCT's jurisdiction to regulate that system is properly and firmly established. Finally, the Court denies both the defendants' motion to dismiss and the City's motion to intervene.[11]

SO ORDERED.

---

**10.** It makes no sense to consider the defendants other grounds for dismissal unless and until the NYSCCT properly establishes its jurisdiction in this matter. The Court does request, however, that the parties submit briefs on the question of how the viability of the plaintiffs' state claims will be affected by the Supreme Court's recent holding in *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, ——, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984) (Eleventh Amendment precludes federal courts from hearing, even under principles of pendent jurisdiction, any claim against a state official for alleged violations of state law).

**11.** Though it probably goes without saying, nothing would be achieved by granting the City leave to intervene in this action at this time. Although the City says it should be allowed to intervene in order to conduct discovery on the critical issue of whether television signals will have to be transmitted across public thoroughfares, such discovery should and will be conducted in the state administrative forum, not this one. As the papers clearly show, the City has had, and will again have, full opportunity to be heard by the NYSCCT. Of course, the City may renew its motion if justification for intervention becomes apparent at a later date.