CHURCH OF SCIENTOLOGY INTERNATIONAL, a corporation; Religious Technology Center, a corporation; and Scientology Missions International, a corporation, Plaintiffs,

v.

The ELMIRA MISSION OF the CHURCH OF SCIENTOLOGY, a corporation, a/k/a Church of Scientology, Mission of Elmira, a/k/a Dianetics Center, a/k/a Scientology Elmira, a/k/a Center for Creative Learning; Harry Palmer, an individual; and Avra Honey-Smith, an individual, Defendants.

No. CIV–85–412T.

United States District Court, W.D. New York.

Aug. 1, 1985.

Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y. (Kevin J. Arquit, Rochester, N.Y., of counsel), for plaintiffs.

Weidman & Jordan, Rochester, N.Y. (Mark S. Nunn, Rochester, N.Y., of counsel), for defendants.

TELESCA, District Judge.

For over a decade, defendant Harry Palmer has been the operator and President of the Elmira Mission of the Church of Scientology. The Elmira Mission operated for many years with the blessings of the highest church officials until 1984, when the Elmira Chapter ceased paying its regular tithes to the mother church in California, Scientology Missions International. Within a few months, Mr. Palmer was notified by the Religious Technology Center (which purports to be the owner and protector of the trademarks associated with the religion of Scientology) that he had violated the obligations of his license agreement. After the parties failed in attempts at private dispute resolution, including arbitration, the Church of Scientology International brought the matter to this Court.

According to the complaint, the Elmira Mission of the Church of Scientology is presently using the "Scientology" tradename and marks without the authorization of the church organization, and is therefore infringing plaintiffs' rights under the Federal Trademark Act of 1946.[1] Consequently, plaintiffs now move this Court for a preliminary injunction to restrain defendants from further infringement during the pendency of this lawsuit. For the reasons set forth below, that request must be denied.

### DISCUSSION

#### I.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985) (*quoting* 11 Wright and Miller, *Federal Practice and Procedure*, Section 2948, at 431 (1973)). Plaintiffs have made no serious attempt to explain with evidentiary detail how that requirement might be satisfied under the particular facts of this case. Rather, plaintiffs have placed their primary reliance on the argument that the elements of "irreparable harm" are established in a trademark action simply by a showing of

---

1. Plaintiffs also assert additional claims arising under New York State law, but have expressly based their application for a preliminary injunction solely on their claims for relief under Federal Trademark law.

the likelihood of plaintiff's success on the merits. Plaintiffs apparently take the position that they must be entitled to a preliminary injunction if they succeed in demonstrating a likelihood of success on their trademark claim, since such a showing would entail, as a matter of law, a conclusive and irrebuttable presumption of possible irreparable injury. Although the defendants have never contested that position, I draw a contrary conclusion from my reading of the applicable case law.

■ When a plaintiff seeks a preliminary injunction for violations of trademark or copyright law, it is now well settled in this Circuit that "allegations of irreparable injury need not be very detailed", because normally such injury can be presumed from infringement. *Wainwright Securities, Inc. v. Wall Street Transcript Corporation*, 558 F.2d 91, 94 (2d Cir.1977) (copyright), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). Due to the unique role played by a trademark in commerce, and the difficulties in measuring the value of the goodwill that it represents, there is a virtually insurmountable presumption that irreparable harm is at least possible (if not likely) where infringement is not enjoined. Consequently, when a plaintiff establishes a likelihood of success in a trademark infringement action, by demonstrating that defendant's use of a mark is likely to cause confusion or mistake, the courts in this Circuit will almost routinely find the possibility of irreparable harm and grant preliminary injunctive relief.

In *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir.1972), the Court of Appeals announced that, "in trademark cases, confusing similarity between marks is sufficient injury to warrant the issuance of a preliminary injunction". Reasoning that "an injunction will issue" when an infringing mark is likely to cause confusion, the Second Circuit held that the District Court Judge below had abused her discretion in denying a preliminary injunction on the ground that the plaintiff had failed to show the necessary "irreparable injury". *Id. Accord, Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1052 (2d Cir.1983) ("A preliminary injunction will issue where an advertisement creates a reasonable likelihood of confusion by consumers regarding the origin or sponsorship of the product"), *cert. denied*, — U.S. —, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Coca-Cola Company v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir.1982) (Holding that statistical tests provided "sufficient evidence of a risk of irreparable harm because they demonstrate that a significant number of consumers would be likely to be misled"); *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979) ("In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1)"); *American Home Products Corporation v. Johnson Chemical Company, Inc.*, 589 F.2d 103, 106 (2d Cir.1978).

In reliance on these and similar pronouncements, many District Courts in this Circuit have held that the requisite showing of possible irreparable injury follows as a matter of course where there is a likelihood of consumer confusion. *Tavaro S.A. v. Jolson*, 591 F.Supp. 846, 853–54 (S.D.N.Y.1984); *Camp Beverly Hills, Inc. v. Camp Central Park, Inc.*, 217 U.S.P.Q. 783, 785 (S.D.N.Y.1982); *Cuisinarts, Inc. v. Robot-Coupe International Corp.*, 509 F.Supp. 1036, 1044–45 (S.D.N.Y.1981); *Lacoste Alligator S.A. v. F. Saltstein, Inc.*, 216 U.S.P.Q. 985 (S.D.N.Y.1981).

In a pair of recent trademark decisions, however, the Second Circuit Court of Appeals has now made it clear that it will demand a slightly more discriminating analysis of the requirements for a preliminary injunction. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir.1985) and *Bell & Howell: Mamiya Company v. Masel Supply Company Corp.*, 719 F.2d 42 (2d Cir.1983). In both cases, the District Courts below had found that the plaintiffs had satisfied their burden of demonstrating a likelihood of confusion. Consequently, in

keeping with what had become the customary practice within this Circuit, both District Courts granted preliminary injunctions against continued infringement without any extended discussion or explicit findings with respect to irreparable harm. In both cases, however, the Court of Appeals vacated the preliminary injunction as an abuse of discretion, on the grounds that the District Court had failed to adequately consider whether there was a sufficient factual foundation for any presumption of possible irreparable harm. Without deciding whether the plaintiffs were likely to prevail on the question of trademark infringement, the Second Circuit decided in both cases that the type of "confusion" found by the District Court did not support an inference of possible irreparable injury.[2]

Accordingly, although the inference of possible irreparable harm is nearly inexorable when a likelihood of confusion is established, that presumption may be rebutted. *Citibank, supra,* 756 F.2d at 276; *Dow Jones and Company, Inc. v. Board of Trade of the City of Chicago,* 546 F.Supp. 113, 117 (S.D.N.Y.1982) (copyright). As Chief Judge Henry J. Friendly observed, in defining the standard for preliminary injunctive relief against trademark infringement: "Where there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages *almost* inevitably follows." *Omega Importing Corp. v. Petri-Kine Camera Company,* 451 F.2d 1190, 1195 (2d Cir.1971) (emphasis added). This conclusion is compelled by the fundamental principles of equity jurisprudence, since a rigid and irrebuttable presumption of irreparable harm would violate the well-established maxim that "equitable relief must, by its very nature, be tailored to the facts of a particular dispute". *Joseph Scott Company v. Scott Swimming Pools, Inc.,* 764 F.2d 62, 63 (2d Cir.1985). The Second Circuit has repeatedly observed that suits demanding injunctive relief against trademark infringement require a "comprehensive analysis of all the relevant facts and circumstances", *Vitarroz v. Borden, Inc.,* 644 F.2d 960, 968 (2d Cir.1981), since "each trademark infringement case presents its own unique set of facts". *Thompsom Medical Co., Inc. v. Pfizer, Inc.,* 753 F.2d 208, 214 (2d Cir.1985).

■ For the foregoing reasons, I hold that a plaintiff who demonstrates a likelihood of success in a trademark infringement action will *"almost* inevitably" be entitled to a presumption of possible irreparable injury adequate to sustain the granting of a preliminary injunction, but that inference must always remain open to rebuttal. Consequently, before granting a preliminary injunction against trademark infringement, a Federal Judge must first be satisfied that the reasoning traditionally underlying the ordinary presumption of "irreparable harm" is consistent with the unique facts and circumstances of the particular case. This duty exists even where, as here, the party opposing the injunction has made no serious attempt to explain why that ordinary presumption might be inapplicable.[3] Accordingly, I now turn to

---

**2.** Although the Second Circuit's decisions in *Bell & Howell* and *Citibank* represent a fairly clear departure from prior case law in this Circuit, the issue apparently remains somewhat unsettled. In its most recent pronouncement on this subject, in a decision reached subsequent to oral argument in the instant case, the Second Circuit Court of Appeals stated that, "[i]n a trademark case, irreparable injury will be found" where the plaintiff demonstrates a likelihood of success on the issue of potential consumer confusion. *Joseph Scott Company v. Scott Swimming Pools, Inc.,* 764 F.2d 62, 66 (2d Cir.1985). Accordingly, the Court of Appeals upheld the District Court's finding of possible irreparable harm (and the issuance of a preliminary injunc-

tion) simply on the grounds that confusion seemed likely, without *any* further discussion as to how that confusion might lead to irreparable injury. *Id.,* at 67.

This aspect of the *Scott* decision is not easily reconciled with the other recent decisions by the Second Circuit on this same question, although it is consistent with the substantial body of prior case law. The resolution of this tension requires—and surely deserves—further clarification from the Court of Appeals for this Circuit.

**3.** In their opposition to this motion, defendants have placed primary reliance on their arguments as to plaintiffs' likelihood of success on the merits.

the question of whether there is any realistic possibility that the infringing activities alleged in this case, if not enjoined during the pendency of this lawsuit, might cause harm which is "irreparable" in the sense that it cannot be fully compensated by legal remedies.

## II.

To prevail on their claim for federal trademark infringement, plaintiffs will be required to prove that the defendants' business activities are "likely to cause confusion, or to cause mistake, or to deceive". 15 U.S.C. Section 1114(1). In trademark cases where the plaintiff appears likely to prevail on the merits, the courts of this Circuit will normally presume that such "confusion", if not enjoined, will be likely to cause irreparable economic injury. Generally speaking, that possibility of irreparable harm may be created in two different ways: by the defendant's exploitation of protected trademarks for its own advantage, or by the defendant's corruption or dilution of the value of the goodwill and reputation associated with that trademark. Both of those possibilities must now be considered individually in the context of this particular factual situation.

## A.

The most common economic injury of trademark infringement occurs when the infringer exploits the value of its competitor's trademark in an effort "to divert business by misinforming the consumer". *Sutton Cosmetics v. Lander Company*, 455 F.2d 285, 288 (2d Cir.1972). The result for the trademark owner may be a direct loss

of sales, since many consumers are deceived or confused into associating the infringer's product or service with the trademark. Although the injured trademark owner would be entitled to recover the profits on the infringing items, the lost profits may not be fully compensable in monetary damages, since it is "notoriously difficult" to prove the loss of sales due to infringement. *Omega Importing Corp.*, *supra*, 451 F.2d at 1195. Consequently, the ordinary presumption of irreparable harm is valid where a competitor's activities are likely to "mislead consumers and, as a consequence, cause them to shift their purchases from plaintiff's product to defendant's". *Coca-Cola Company, supra*, 690 F.2d at 317. *Accord, Wainwright Securities, supra*, 558 F.2d at 94 (copyright).

█ In the present case, there appears to be no likelihood that defendants' allegedly infringing activities would directly divert any business from the plaintiffs, since there is no evidence that the parties are in direct economic competition. The plaintiffs have never denied or contradicted the sworn deposition testimony of defendant Harry Palmer that the Elmira Mission of the Church of Scientology is the only Scientology mission in that city, and that "[t]here is no other Scientology organization in Elmira to compete with". (Palmer deposition at 38.) Mr. Palmer also testified, and plaintiffs' counsel conceded at oral argument, that the Elmira Mission is the only Church of Scientology within a radius of almost 150 miles of that town.[4]

All of the evidence presented to this Court indicates that the impact of the Elmi-

With respect to the possibility of irreparable harm, defendants' primary contention has been simply that plaintiffs have failed to meet their burden of proof, even though defendants have never disputed plaintiffs' position that such a possibility can normally be inferred from the likelihood of success on the merits. Beyond that, defendants' only argument as to irreparable injury has been their assertion, without the citation of any legal authority, that the Church of Scientology is too large to be injured economically, and too notorious to suffer any further damage to the commercial value of its good will and reputation.

Fortunately for the defendants, my disposition of the issues raised in this opinion renders it unnecessary for me to rule on any of those arguments.

4. Mr. Palmer testified that the Elmira Mission is the only Scientology Center between Buffalo and New York City. According to data compiled and released by the Auto Club of Elmira, that city is a drive of 144 miles from Buffalo, and 240 miles from New York City. These facts are a proper matter for judicial notice. Federal Rules of Evidence 201.

ra Mission's activities is entirely confined to an area where the plaintiffs have had no competing business interests at all. These factors suggest that any diversion of plaintiffs' sales by defendants' competition will be minimal at best, easily calculated, and readily compensated by monetary damages. I therefore must conclude that there is no realistic possibility that the Elmira Mission might irreparably injure the Church of Scientology by directly reducing the demand for plaintiffs' services.

This conclusion is compelled by the decision of the Second Circuit Court of Appeals in *Sutton Cosmetics, supra,* 455 F.2d at 286, in which the court upheld a preliminary injunction against apparent trademark infringement, "[w]ith the single modification of limiting the geographical scope of the injunction to the areas in which [the plaintiff] has sold". The court reasoned that:

A preliminary injunction under Section 43(a) of the Lanham Act will issue only on a showing of a clear likelihood of success on the merits and irreparable injury, and [plaintiff] cannot be irreparably injured by [defendant's] sales in markets in which [plaintiff] does not itself sell. Accordingly, we hold that the order must be modified to encompass only [those geographical] areas in which the district court finds that [plaintiff] was making sales at the time of the suit.

*Id.,* at 288–289 (footnote and citation omitted).[5] Applying that standard to the instant case, the Church of Scientology's request for a preliminary injunction must be denied altogether.

### B.

Even where the parties to a trademark action are not direct economic competitors, irreparable injury is often found where the infringer's activities threaten to injure the economic value of the goodwill and reputation associated with the trademark. If consumers are confused into "mistak[ing] defendants' inferior goods for those of plaintiffs", the resulting loss of goodwill may not be easily translated into money damages. *LaCoste Alligator, supra,* 216 U.S. P.Q. at 989. Consequently, "if an infringer's product is of poor quality, or simply not worth the price, a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market". *Omega Importing Corp., supra,* 451 F.2d at 1195. Finally, infringers may also undermine the value of a trademark by diluting its distinctiveness, and the resulting confusion "may cause purchasers to refrain from buying either product and to turn to those of other competitors". *Id.* Once again, however, the unusual and undisputed circumstances of this case apparently rule out any possibility that the Elmira Mission might irreparably injure the Church of Scientology in any of these ways.

First of all, there is no possibility that the Elmira Mission might confuse or deceive anyone into a "mistaken" impression that the Church of Scientology International has authorized individual churches and missions to deliver Scientology services and materials on a local basis. On the contrary, plaintiffs concede that they have licensed 33 churches and over 80 missions of Scientology in the United States alone, and each uses the term "Church of Scientology" as a part of its name. (Affidavit of Warren McShane para. 5).

Furthermore, plaintiffs have never even alleged, much less offered any evidence, that the courses and services offered by the Elmira Mission are in any way inferior to, or even different from, those being provided by authorized missions and churches.[6] Indeed, all of the available evi-

---

**5.** It is noteworthy that, in this respect, the *Sutton* decision is also inconsistent with the plaintiffs' argument (see Part I of this decision) that a showing of plaintiffs' likelihood of success in a trademark action necessarily entails the possibility of irreparable harm and the propriety of preliminary injunctive relief.

**6.** I must therefore conclude, as the Court of Appeals did in *Bell & Howell, supra,* 719 F.2d at 46, that "there would appear to be ... no significant likelihood of damage to [the plaintiff's] reputation" since thus far there has been no evidence that the courses and instruction of-

dence points to a contrary conclusion. Plaintiffs concede that the Elmira Mission was an authorized mission of the Church of Scientology "for many years and until at least 1982",[7] at which time the Elmira Mission was granted by Scientology Missions International a written license to use the assorted trademarks owned by the Church.[8] Plaintiffs further concede that the Elmira Mission was authorized and licensed to use the trademarks and service marks of the religion, including the name "Scientology", "until relatively recently".[9] Yet, despite these admissions, the plaintiffs have never denied or drawn into serious question the testimony of Harry Palmer that the Elmira Mission has been providing the same Scientology training and courses for more than a decade.[10] Plaintiffs have offered neither allegations nor evidence to dispute Palmer's testimony that the Elmira Mission is still offering the same services it provided during the decade when it operated with the blessings and authorization of top Church officials. Indeed, when asked by this Court whether the defendants are presently teaching Scientology in accordance with the established tenets of the religion, plaintiffs' counsel replied, "We do not know what they are teaching." (Tr. oral arg. 11).

In fact, however, plaintiffs have a rather accurate idea of what the defendants are teaching at the Elmira Mission of the Church of Scientology. Along with this motion for a preliminary injunction, plaintiffs filed on the same day the affidavit of Celeste DeFiore, a student at Elmira College who visited the Elmira Mission on a number of occasions beginning in late 1984,

months after the defendants had allegedly repudiated their license agreement. Her affidavit contains a detailed narration of what she was shown, sold, and taught at the Mission, and includes a number of exhibits of pamphlets and brochures that she was sold or given by the defendants. Those pamphlets purport to quote heavily from, and appear to promote the sale of, books and materials marketed by the Church of Scientology. In light of the considerable detail provided to the plaintiffs by this affidavit about the "Scientology" courses and services offered at the Elmira Mission, it is extremely significant that plaintiffs have never alleged that those courses or programs deviate in any way from the true teachings of the Church, or from the courses taught by the Elmira Mission during the 10 year period when it enjoyed the favor of the Mother Church.

For the foregoing reasons, I conclude that there is no realistic possibility that any consumer might be "confused" or "deceived" into believing that the form and the substance of the courses offered by the Elmira Mission have met the approval of the Church of Scientology. All of the available evidence shows that such an impression would not be mistaken, since the defendants' practices, until very recently, enjoyed the authorization of the Church for many years. The only respect in which the Elmira Mission is now allegedly in breach of its license agreement, and the only reason offered by the plaintiffs for their sudden refusal to continue sponsoring that Mission, is the fact that the defendants have not paid their tithes to the plaintiffs since July, 1984.[11] (Affidavit of Gerald

---

fered by the Elmira Mission are inferior to those sold by the Church of Scientology.

**7.** Plaintiffs' Memorandum dated May 2, 1985, at 4.

**8.** Affidavit of Warren McShane, para. 11.

**9.** Plaintiffs' notice of motion and motion for preliminary injunction, dated May 2, 1985, para. 7.

**10.** Palmer deposition, at 25. In fact, far from questioning Palmer's assertion that he has been offering the same courses for 12 years, plaintiffs

have indicated a willingness to adopt that statement as an admission against defendants' interest on the issue of infringement. See the affidavit of Kevin J. Arquit, sworn to May 29, 1985, at p. 4.

**11.** Of course, that aspect of this case (like the fact, discussed in part II.A. of this decision, that the parties are not directly competing in the same areas) will not necessarily preclude the plaintiffs from ultimately prevailing on the merits of their federal trademark claims. Nevertheless, for the reasons stated in this opinion, those factors rule out any serious possibility that

Laws, para. 3.) Consequently, if the Elmira Mission is allowed to continue its allegedly infringing use of the "Scientology" name and trademarks during the pendency of this lawsuit, some consumers might be "deceived" or "confused" at most into believing that the Mission has paid up all of its debts to the Church headquarters in California. That sort of "confusion" may well be actionable as a trademark violation, but it obviously poses absolutely no danger of irreparable harm to the goodwill and reputation enjoyed by the plaintiffs' trademarks.

█ In this respect, the present case is quite similar to the factual pattern involved in *Bell & Howell: Mamiya Company v. Masel Supply Company*, 548 F.Supp. 1063 (E.D.N.Y.1982), *reversed*, 719 F.2d 42 (2d Cir.1983). The District Court in that case found a "substantial likelihood" that the public might be led to confuse an unauthorized importer of Japanese cameras with the American company which actually owned the legitimate and exclusive rights to distribute those cameras in this country. *Id.*, 548 F.Supp. at 1079. Without reaching the merits or questioning that finding by the District Court, the Second Circuit Court of Appeals concluded that irreparable injury had not been demonstrated, since the plaintiff had not shown that the sale of the camera by an allegedly unauthorized distributor was "likely to cause any consumer to be misled about the *product* he or she purchases". *Id.*, 719 F.2d at 46 (emphasis added). In so doing, the Court of Appeals implicitly concluded (as I hold in this case) that a trademark violation does not pose any threat of irreparable injury merely because consumers are "confused" into believing that they are dealing with an authorized or licensed distributor.

█ In summary, although the facts alleged by the plaintiffs in this case may well satisfy the legal elements for a case of trademark infringement, the *economic* character of this case bears little resemblance to that of the traditional trademark infringement situation. From the perspective of potential economic consequences, the Elmira Mission's alleged "infringement" is actually much closer to the case of a bookstore which orders and retails authentic "Scientology" books without paying the publisher for the books. Nothing could be further from irreparable injury.

## CONCLUSION

For the reasons set forth above, I conclude that the version of the facts alleged by plaintiffs in this case, even if true, fails to create any possibility that plaintiffs might be irreparably injured if the Elmira Mission is not enjoined from its allegedly infringing use of the "Scientology" trademarks during the pendency of this lawsuit. For that reason, and for the reasons outlined in this Court's oral decision at the argument of this motion on June 5, 1985, the plaintiffs' motion for preliminary injunctive relief must be denied. It is therefore unnecessary for me at this time to reach the merits of plaintiffs' trademark claims, or to decide any of the arguments advanced by the defendants in opposition to this motion.

ALL OF THE ABOVE IS SO ORDERED.

---

plaintiffs might be irreparably harmed by the denial of a preliminary injunction at this point.