**JOSEPH SCOTT COMPANY,**
**Plaintiff-Appellant,**

v.

**SCOTT SWIMMING POOLS, INC.,**
**Defendant-Appellee.**

No. 1247, Docket 84-7681.

United States Court of Appeals,
Second Circuit.

Argued May 29, 1985.
Decided June 13, 1985.

George Gottlieb, New York City (Gottlieb, Rackman & Reisman, P.C., Barry A. Cooper, New York City of counsel), for plaintiff-appellant.

Armand Cifelli, Bridgeport, Conn. (Cifelli, Frederick & Tully, James R. Frederick, Bridgeport, Conn., of counsel), for defendant-appellee.

Before KAUFMAN and KEARSE, Circuit Judges, and MISHLER,* District Judge.

KAUFMAN, Circuit Judge:

We are called upon today to review the terms of a preliminary injunction that substantially restricts an individual's right to use his own name in promoting a personal business endeavor. Because equitable relief must, by its very nature, be tailored to the facts of a particular dispute, we shall proceed to set forth the factual background of this appeal before addressing the relevant legal principles.

\* The Honorable Jacob Mishler, Senior District Judge, Eastern District of New York, sitting by

BACKGROUND

In 1937, Joseph M. Scott, Sr.—the father of the principal participants in this action—established Scott House and Garden Service, the predecessor to Scott Swimming Pools, Inc. ("SSPI"). Although the design and construction of swimming pools constituted only a small fraction of the business in its incipiency, by the 1950's it had become the firm's primary source of income. By the time of its incorporation in 1969, SSPI had gained a reputation throughout the state of Connecticut as a builder of quality swimming pools.

Joseph M. Scott, Sr. has two sons, James Scott ("James"), and Joseph M. Scott, Jr. ("Joseph Jr."), who worked in the family business during their youth. James's participation with the company was more constant than Joseph Jr.'s, and he eventually purchased the firm from his father. In 1969, James became president of SSPI, and his father remained as vice president. Following a ten-year period during which Joseph Jr. lived and worked in Texas, he returned to Connecticut in 1965 and rejoined the family business. Until 1972, he was employed by SSPI as a salesman and customer relations representative.

Over the course of time, the two brothers frequently disagreed about the structure and operation of the company and, in 1972, Joseph Jr. left SSPI to embark on his own career. To this end, Joseph Jr. established a firm called Scott AquaScapes ("AquaScapes"), and the brothers entered into an agreement pursuant to which the new company was to serve as the sole residential sales agent for SSPI in Fairfield County, Connecticut. The agreement further provided that AquaScapes would receive a commission equal to ten percent of the price of each SSPI pool that it sold. AquaScapes performed certain peripheral work (e.g., site clearing, rock placement and deck construction) for its own benefit, and assumed sole responsibility for customer relations. Finally, AquaScapes explicit-

designation.

ly agreed to promote SSPI's good will in Fairfield County.

In 1974, the two companies entered into a new agreement, whereby AquaScapes continued to act as the sole residential sales agent for SSPI in Fairfield County, but no longer sold SSPI pools on a commission basis. Instead, AquaScapes agreed to enter into two contracts with each customer. First, Joseph Jr., as president of AquaScapes, would contract on SSPI's behalf for the purchase and installation of the basic SSPI pool shell. A second contract was to be made for AquaScapes to provide all landscaping and pool servicing. The 1974 agreement permitted AquaScapes to perform additional work, thus providing a correspondingly greater profit potential. All contracts made by Joseph Jr. for the basic SSPI pool were subject to review by SSPI's principal office. As was the case with the earlier agreement, AquaScapes promised to promote the good will of SSPI. Until 1983, SSPI referred all inquiries from potential customers in Fairfield County to AquaScapes. And during this period Joseph Jr. acquired a reputation, in his own right, as a designer of quality custom pools.

In 1983, Joseph Jr. decided to terminate the agency relationship between AquaScapes and SSPI. He filed an Amended Certificate of Incorporation under Connecticut law changing the name of the firm to the "Joseph Scott Company." The new company did not sell SSPI pools, but instead hired sub-contractors to build basic pools shells. The Joseph Scott Company's logo prominently featured the word "SCOTT," positioned above a tree and pool motif. The slogan adopted by the Joseph Scott Company stated "Swimming Pool Craftsmen & Landscape Designers for Three Generations." Following its formation, the Joseph Scott Company removed

the SSPI identification plaques from existing pools it had installed in Fairfield County, and replaced them with new ones that read "JOSEPH SCOTT COMPANY, For Three Generations."

SSPI quickly and vehemently objected to Joseph Scott Company's use of its mark and logo.[1] In response, in May 1984, Joseph Scott Company sought a declaratory judgment in the United States District Court for the District of Connecticut permitting the use of its name and the name of its president, Joseph M. Scott, Jr., in all aspects of the swimming pool business. SSPI answered in a timely fashion and moved for a preliminary injunction enjoining Joseph Scott Company, *inter alia*, from infringing SSPI's rights in the mark "SCOTT" and its logo, and prohibiting the use of the name "Joseph Scott, or any colorable imitation thereof, as a company name, trade name, trademark, or service mark."

The parties agreed to the entry of a Temporary Restraining Order on Consent and, in June 1984, a six-day hearing was held on SSPI's motion for preliminary injunctive relief. During the proceedings before Judge Daly, James Scott's secretary testified that she had received a telephone call from a client inquiring whether Joseph Scott, Sr. had formed his own business. Bruce Fishkin, a consultant to both firms, stated that the marketing strategy he had developed for Joseph Jr. was "strategically identical" to the one he had designed previously for SSPI, and that he had warned him of the similarity. Moreover, he opined that if two hundred prospective "Scott" pool purchasers were asked "if … they could make a distinction [between SSPI and the Joseph Scott Company], I think they'd be confused between the two." Betty Ajay, an established landscape designer, testified that the name Joseph Scott, Jr.

1. In 1975, SSPI was granted a Connecticut Certificate of Registration Number for its logo mark "SCOTT" and its "Kidney Design," as well as its slogan, "the *Preferred* Builder of Quality since 1937." In 1978, it received a U.S. Registration Number for its service mark "Scott" in connection with the construction and mainte-

nance of swimming pools. In 1981, SSPI was granted a U.S. Registration Number for the Trademark/Service Mark "SCOTT" and its "Reflected Tree Design," in connection with the design, construction and landscaping of swimming pools.

was synonymous with SSPI in Fairfield County. Similarly, James Fox, a landscape architect, stated, "I know that Joe Scott [Jr.] is Scott Pools and that's what I care about." When asked which company would build a pool if he were to refer a customer to Joseph Jr. personally, Fox replied, "Joe Scott Pools, Scott AquaScapes, Scott Pools."

From this testimony, the district court concluded that "confusion was evident.... Witnesses repeatedly and inadvertently referred to pools built by the Joseph Scott Company as 'Scott Pools.'" He found that the Joseph Scott Company's logo was "curiously similar and almost identical to the registered logo" of SSPI. The court also focused on the Joseph Scott Company's slogan, which bore a striking resemblance to SSPI's slogan, "the *Preferred* Builder of Quality since 1937." Judge Daly noted that the Joseph Scott Company's slogan was factually erroneous, and improperly suggested that the firm was related to SSPI. In sum, the district court concluded that the Joseph Scott Company's entire marketing strategy "[h]as caused, and [is] likely to continue to cause, confusion on the part of an appreciable number of consumers." Accordingly, Judge Daly held that there existed "an actual and imminent threat of irreparable harm" to SSPI, and granted injunctive relief.

The preliminary injunction issued by the district court [2] is divided into two sections. Section I specifically prohibits the use of

**2.** For the sake of clarity, the injunction issued by the district court is set forth in its entirety:

This case came on to be heard on Defendant-Counter-claimant's motion for a preliminary injunction and the Court, having considered the pleadings, affidavits and exhibits submitted in support and in opposition to said motion, and having heard oral evidence and argument of counsel in open court, and it appearing to the Court after due deliberation that Plaintiff is actually engaged in committing and will continue to commit the acts set forth below to the irreparable injury of the Defendant-Counter-claimant, it is hereby

I. ORDERED that JOSEPH SCOTT COMPANY its officers and all persons or corporations in privity with it or controlled by it, without limitation including agents, servants, employees, successors or assigns to be enjoined:

(a) from using the word SCOTT or any colorable imitation thereof, or any other mark, word or name which is confusingly similar to SCOTT, as or as part of any company name, trade name, trademark, service mark, or telephone or other directory listings, in connection with the sale or offering for sale of goods, or the performance of or offering of services, pertaining to the swimming pool business, including without limitation the design and/or construction of swimming pools, the design and/or installation of accessories, such as filters, heaters, diving boards, lights and covers, the design and/or construction of decks or the design and/or landscaping of grounds, and the maintenance, repair or servicing of any of the foregoing;

(b) from infringing SCOTT SWIMMING POOLS INC.'S rights in its company name and trade name SCOTT SWIMMING POOLS or its trademarks and service marks: SCOTT, SCOTT and Reflected Tree Design, or SCOTT and Kidney Design;

(c) from representing, stating or implying, directly or indirectly, that:

(1) Plaintiff is connected in any way with or a successor to Scott Swimming Pools, Inc.;

(2) any product made, offered for sale, sold or distributed by Plaintiff or any service offered or performed by Plaintiff is authorized, sponsored, endorsed, produced by, or otherwise connected with Scott Swimming Pools, Inc.;

(3) that any product made, offered for sale, sold or distributed by Scott Swimming Pools, Inc., or any service offered or performed by Scott Swimming Pools Inc. was designed, made, offered for sale, sold or distributed by, or performed by, Plaintiff;

(4) that Plaintiff was formed at anytime prior to 1972, or that Joseph M. Scott, Jr.'s parents or brother, James M. Scott, are associated with Plaintiff;

(d) from failing to refer customers, potential customers or sales leads seeking Scott Swimming Pools, Inc. to it;

(e) from using swimming pools or photographs of swimming pools constructed by Scott Swimming Pools, Inc. in the advertisement, promotion or sales efforts of Plaintiff, and from using owners of swimming pools constructed by Scott Swimming Pools, Inc. as references without disclosing clearly and prominently in writing that the swimming pools were constructed by Scott Swimming Pools, Inc.;

(f) from removing signage bearing the names and/or marks of Scott Swimming Pools, Inc. at swimming pools constructed by Scott Swimming Pools, Inc., and further, Plaintiff shall identify to Scott Swimming Pools, Inc., in writing the sites where such signage has been removed, shall pay the reasonable costs of restoring signage bearing the names and marks of Scott Swimming Pools,

the word "SCOTT" in the name of Joseph Jr.'s company, and contains general prohibitions against unfair competition. Section II delineates those specific circumstances in which the new company may demonstrate Joseph Jr.'s affiliation with the firm. The injunction provides that the name Joseph M. Scott Jr. may be used only as a full signature, and may be no larger than one-fourth the size of the lettering used in the company name. Moreover, the signature may appear only in the "lower right-hand portion of [a] label, advertisement, or page," provided it appears "in direct conjunction with a disclaimer stating, "Not Connected with Scott Swimming Pools, Inc."

Joseph Scott Company timely filed a notice of appeal from the order granting the preliminary injunction.[3]

## DISCUSSION

■ The standards for granting preliminary injunctive relief are well established in this Circuit. The moving party must show (a) the possibility of irreparable injury, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting injunctive relief. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *Caulfield v. Board of Educ.*, 583 F.2d 605, 610 (2d Cir.1978). In a trademark case, irreparable injury will be found where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *McGregor-Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1130 (2d Cir.1979).

■ In reviewing the district court's disposition of a motion for a preliminary in-

Inc., and shall cooperate in restoring such signage;

(g) from concealing, attempting to conceal, interfering with or attempting to interfere with the contractual and/or business relationship between Scott Swimming Pools, Inc. and owners of swimming pools constructed by Scott Swimming Pools, Inc.;

(h) from otherwise competing unfairly with Scott Swimming Pools, Inc.;

(i) from continuing to use the telephone number used as an agent of Scott Swimming Pools, Inc., namely Wilton 762–0353 and to cause that telephone number to be answered by an independent answering service instructed to ascertain whom the caller desires to reach and refer calls intended for Scott Swimming Pools, Inc. to it and calls intended for Plaintiff to it, the cost of the answering service to be borne equally by the parties;

II. Plaintiff, its officers and all persons or corporations in privity with it or controlled by it, without limitation including agents, servants, employees, successors or assigns shall be permitted to show Joseph M. Scott, Jr.'s connection with Plaintiff by using the full signature of Joseph M. Scott, Jr. on labels and in advertising and promotional materials, together with a true statement that his connection with Plaintiff, if:

(a) the signature is not used as a company name, trade name, trademark or service mark;

(b) a company name, trade name, trademark or service mark complying with section I hereof appears on the same label or page of advertising or promotional material in a prominent and easy-to-read manner;

(c) the size of the lettering of the signature is no larger than one-fourth the size of the lettering of the words in the company name, trade name, trademark or service mark specified in the preceding paragraph;

(d) the signature shall appear only in direct conjunction with the following disclaimer, "Not Connected with Scott Swimming Pools, Inc.", which disclaimer shall be the same size and no less prominent than the signature;

(e) the signature and disclaimer shall appear only within the lower right hand portion of the label, advertisement or page;

(f) provided, however, that the signature may appear at the conclusion of correspondence on business cards, on checks, or on legal and business documents without the disclaimer.

3. In August 1984, Joseph Scott Company filed a Notice of Appeal, and moved for modification of the preliminary injunction. The District Court denied that motion. Following the District Court's issuance of its Finding of Fact and Conclusions of Law in December 1984, Joseph Scott Company moved, pursuant to Fed.R.Civ.P. 52(b), to add additional findings. Pending a decision on the second motion, Joseph Scott Company withdrew its Notice of Appeal without prejudice. Following the denial of its Rule 52 motion, the appeal was reinstated.

junction, factual findings will be upheld unless they are found to be "clearly erroneous." *See Anderson v. City of Bessemer,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). There was ample testimony upon which Judge Daly could find that actual confusion existed in the relevant market, and that the potential for further confusion was acute. Experienced professionals expressed some confusion regarding the affiliations of the Scott brothers to the respective firms. Moreover, a visual comparison of the two companies' marketing materials revealed striking similarities. In sum, our review of the transcript below reveals that the district court's findings are not reversible pursuant to a strict application of the "clearly erroneous" standard.

In assessing the remaining requirements for a preliminary injunction, we agree with Judge Daly's conclusion that, based on *Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731 (2d Cir.1978), SSPI is likely to succeed on the merits or, alternatively, that there exist sufficiently serious questions going to the merits, and that the balance of the hardships tips decidedly in favor of SSPI. Accordingly, we hold that SSPI's motion for preliminary injunctive relief was properly granted.

*The Scope of the Injunction*

█ By its very nature, a preliminary injunction is a specific equitable remedy and, thus, must be framed in such a way as to strike a delicate balance between competing interests. By necessity, the scope of the injunction must be drawn by reference to the facts of the individual case, reflecting a careful balancing of the equities. Where, as in the instant case, a decree serves to limit an individual's use of his own name in a business that he has nurtured, a court must be particularly cautious to enjoin only those uses that are likely to create appreciable confusion, and no more. *See Waterman Co. v. Modern Pen Co.,* 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 (1914). The ultimate aim is to frame an injunction that will avoid confusion in the marketplace, protect a prior company's property interest in its name, and permit an individual to exploit his own identity and reputation in a legitimate manner.

█ With these principles in mind, we are troubled by the breadth of the injunctive relief fashioned by the district court. Evidence adduced at the hearing below demonstrated that the use by Joseph Jr. of the company name "Joseph Scott Company" caused actual confusion in the marketplace. Accordingly, the decree prohibiting him from further use of the word "Scott" in the name of the firm seems appropriate.[4] We are not convinced, however, that the more onerous restrictions placed upon the use of his name are necessary under these circumstances.

Indeed, courts have often noted their concern that injunctions in cases such as this be drawn as narrowly as possible. In *Waterman, supra,* 235 U.S. 88, 35 S.Ct. 91, the Court permitted an alleged infringer, who intentionally used his own name to capitalize on the established reputation of another company bearing the same name, to use his full name provided it was followed immediately by a statement disclaiming any connection with the more established firm. Similarly, in *Stetson v. Stetson,* 85 F.2d 586 (2d Cir.), *cert. denied,* 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936), this Court upheld a preliminary injunction that placed some limitations upon the use of the name Stephen L. Stetson. Stephen Stetson had founded a hat manufacturing firm long after the better known and established John B. Stetson company had acquired a reputation as a premier maker of hats. A disclaimer stating that the defendant was never connected with the John B. Stetson Company was found sufficient to avoid confusion between the two firms.

More recently, in *Taylor Wine Co., supra,* 569 F.2d 731, we modified a preliminary injunction prohibiting Walter S. Taylor from infringing the registered trade-

---

4. It appears from the record that Joseph Jr.'s firm has been operating under the name "The Glen Gate Company" since the issuance of the preliminary injunction in August 1984.

marks of the Taylor Wine Company. Taylor's sole connection with Taylor Wines was filial; he was the grandson of its founder. He had no financial interest in the company and, in fact, had sold his own wines since 1970, under the name Bully Hill Vineyards. In 1977, he marketed a new line of wines under the brand name "Walter S. Taylor." In reviewing the preliminary injunction entered by the district court, we concluded that an absolute prohibition against use of the word "Taylor" in connection with labeling, packaging, or advertising was unnecessarily restrictive. We stated: "If ... the second comer owns the company and evinces a genuine interest in establishing as enterprise in which his own skill or knowledge can be made known to the public, that argues in favor of allowing him to use his own name in some restricted fashion." Moreover, "[p]articularly when the infringer is a son or grandson ... the courts have given qualified relief which reflects a judicious balancing of the countervailing interests of protecting an individual's use of his own name and the avoiding of confusion." *Id.* (quoting *Friend v. H.A. Friend & Co.,* 416 F.2d 526, 534 (9th Cir.1969), *cert. denied,* 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970)).

The matter was remanded to the District Court with instructions to permit Taylor to show his personal connection with Bully Hill through the use of his signature on a wine label or advertisement, provided it was accompanied by a statement disclaiming any affiliation with Taylor Wines. We explicitly stated, "to the extent that Walter S. Taylor can exploit his *own* knowledge or techniques as a person, he may do so with the limitations noted, if he refrains from trading on the goodwill of the plaintiff company by competing unfairly." *Id.* at 735.[5]

Returning to the present dispute, we note the striking similarity between the preliminary injunction issued by Judge Daly and the one fashioned by the *Taylor* court. There are, however, important factual distinctions between the two cases that impel us to conclude certain of the injunction's terms extend further than is necessary to avoid confusion and prevent Joseph Jr. from capitalizing on the good will of SSPI. First, Joseph Jr. has a legitimate and compelling interest in using his name in the swimming pool business, having spent twelve years cultivating a personal reputation as a designer of quality custom built pools. It is true that Joseph Jr. was contractually obliged to promote the good will of SSPI in connection with the sale of its basic pools. During the early 1980's, however, sales of SSPI pools comprised an ever smaller portion of his business. As is particularly evident by the terms of the 1974 agreement, Joseph Jr. was given the freedom to develop an independent business, the success of which was predicated on his personal design expertise and sales ability.[6]

Moreover, we note that the *Taylor* injunction was designed to avoid confusion among ordinary consumers of wine. There is an enormous difference, however, between the time and expense necessary to purchase a bottle of wine and that required to purchase a swimming pool that may cost more than $50,000. An absolute prohibition against the use of one's given name, except as a small signature in the corner of a label, may be necessary to eliminate confusion in connection with an ordinary wine purchase. But we believe such a requirement to be unnecessarily restrictive when applied to sales of expensive swimming

5. Following the remand, the case once again came before this court, and specific provisions of the injunction were modified to allow Taylor to use his name as a signature in the lower right-hand corner of any label or advertisement when accompanied by a notice of disclaimer. The size of the signature was limited to one-fourth the size of the lettering used for the words "Bully Hill" on any label or advertisement.

6. That he took advantage of this opportunity is evidenced by 1983 sales figures demonstrating that AquaScapes total sales equaled approximately $1,800,000, and only $450,000 of that amount was attributable to sales of SSPI pools.

pools, requiring countless hours of contemplation and negotiation.[7]

Under these circumstances, we believe Joseph Jr. should be permitted to use his name to describe his past accomplishments and expertise in connection with the design, construction and sale of swimming pools. Of course, he must make perfectly clear that his firm is no longer associated with, and is not a successor to, SSPI. We do not believe, however, that narrow restrictions regarding type size or design are necessary to avoid confusion among potential pool purchasers. A modification of this kind will minimize the hardship on Joseph Jr., while at the same time maintaining the requisite safeguards to protect SSPI's position in the marketplace.

Accordingly, in the interest of judicial expediency and with the hope that the parties will soon proceed to the merits of this case, the order of the district court is modified as follows:

(1) The portion of paragraph II that provides "by using the full signature of Joseph M. Scott, Jr. on labels and in advertising and promotional materials" shall be deleted, and in its place the following language shall be inserted: "by using the full name of Joseph M. Scott, Jr. on pool signage, and in advertising and promotional materials."

(2) The word "signature" in paragraph II(a) shall be changed to the words "full name."

(3) The language of paragraph II(c) that provides "the size of the lettering of the signature is no larger than one-fourth the size of the lettering of the words in the company name" shall read "the size of the lettering of the name is no larger than the lettering of the company name."

(4) Paragraph II(d), prohibiting the use of the signature without a disclaimer, is deleted and the following is substituted:

"(d) the name shall appear only in direct conjunction with the following disclaimer: "Not Connected with, Or a Successor to, Scott Swimming Pools, Inc.", which disclaimer shall be the same size and no less prominent than the name;"

(5) Paragraph (e), prohibiting the signature from appearing other than in the lower right-hand portion of a label, advertisement or page, is deleted.

(6) Paragraph II(f), permitting the signature to appear on checks, legal or business documents, is deleted as unnecessary.

In all other respects, we deem the injunction framed by Judge Daly to be proper. Accordingly, the order of the district court is affirmed as modified.

---

**7.** The district court's repeated use of the term "label" evidences its wholesale reliance on the language of the injunction framed by this Court in *Taylor*. "Labels" are obviously of great significance in the marketing of wine, but it is less clear that they play any role in the sale or promotion of expensive swimming pools.