**KUSAN, INC., Plaintiff,**

v.

**ALPHA DISTRIBUTORS, INC., et al., Defendants.**

**Civ. No. P 87–702(WWE).**

United States District Court,
D. Connecticut.

Feb. 9, 1988.

David J. McDonald, James E. O'Donnell, Coles, O'Connell, Dolan & McDonald, Bridgeport, Conn., Robert J. Schneider, Pro Hac Vice, Robert E. Bouma, Pro Hac Vice, Michelle C. Burke, Pro Hac Vice, Mark J. Buonaiuto, Pro Hac Vice, McDermott, Will and Emery, Chicago, Ill., Michael T. Dolan, Bridgeport, Conn., for plaintiff.

Melvin I. Stoltz, Mattern, Ware, Stoltz & Fressola, Fairfield, Conn., Robert G. McMorrow, Pro Hac Vice, Cynthia Clarke, Pro Hac Vice, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

EGINTON, District Judge.

The parties to this trademark infringement suit are competitors in the vinyl siding industry. The plaintiff Kusan, Inc. is a Delaware corporation with its principal place of business in Tennessee. The defendant Alpha Distributors, Inc. is a Connecticut corporation with its principal place of business in this state, and defendant Vytec International Corporation is a Canadian corporation with its principal place of business in Ontario, Canada. The plaintiff alleges that it has the exclusive right to use the name "Mastic" as a trademark and tradename in connection with the marketing and distribution of vinyl siding in the United States. The defendants dispute this claim to exclusive use and argue that because "Mastic" is part of their corporate history, they may identify with it as factual matter.

The plaintiff claims that by their use of the "Mastic" name in the American market, the defendants are in violation of plaintiff's federal, state and common law trademark and tradename rights. The plaintiff moves for a preliminary injunction to enjoin the defendants from using the name "Mastic" during the pendency of this action. Jurisdiction of the court is based on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

### FACTS

To understand the basis for this dispute, it is important to know the corporate history of the parties. In 1973 an American vinyl siding manufacturer, Mastic Corporation, entered into a joint venture with a Canadian building products company, Anden Holdings, Ltd., to manufacture and sell vinyl siding in Canada under the name of Mastic Manufacturing Ltd., (later to become Mastic, Inc.). In 1982 Mastic Corporation (now Kusan) exercised its option to terminate the joint venture. As a result, Anden Holdings (now Vytec) purchased Kusan's interest in Mastic, Inc.

Mastic, Inc. is currently a subsidiary of Vytec and continues to manufacture vinyl siding which is distributed in various parts of the world. Vytec's distributor in the United States is Alpha, but its other subsidiaries bear the name Mastic. Mastic Corporation, once a subsidiary of Kusan, is now a Kusan operating division. Both Vytec and Kusan market vinyl siding in the United States.

Kusan owns federal trademark registrations for a stylized logo bearing the word "Mastic" (Reg. No. 814,264) and for "Mastic Corp." (Supp.Reg. No. 1,321,543). Its infringement claims are directed at the distribution by Vytec of certain literature in the United States and the activities of Alpha salesmen.

The printed word "Mastic" is used by Vytec only in its corporate literature. "Mastic" does not appear on any of its products; in fact, it sells vinyl siding in the United States under other registered trademarks. The literature provided by Vytec to its American retailers and customers includes brochures labelled "Anden" and others labelled "Vytec." Vytec distributed nearly 2,000 Anden brochures in the United States, including approximately 70 to Alpha, beginning in 1985 when Vytec began making regular sales in this country. In the summer of 1987 it replaced the Anden brochure with the Vytec brochure.

The brochures each contain two or three pages detailing the "Mastic Story," which sets out the corporate history of Vytec, including especially its former relationship with Kusan's subsidiary Mastic Corp. and its own subsidiary Mastic, Inc. in Canada. These brochures were used by Vytec distributors including Alpha to sell Vytec siding products in Connecticut to contractors, builders and remodelers. The corporate histories are confusing. It is difficult, even after close examination, to follow the tortuous history of the Mastic name.

Kusan complains that Alpha salesmen used the Mastic name to sell Vytec's products in Connecticut, referring to Vytec as the "Mastic of Canada." The evidence of this practice is spotty. For example, Kusan submits the affidavits of employees of a Connecticut distributor and a Connecticut contractor, none of whom testified. Furthermore, many assertions that Alpha employees were passing off Vytec products as

Mastic goods are largely hearsay. The testimony of Daniel Sneft is more helpful. Sneft is employed by a Connecticut distributor of Kusan products, Jim Waters Co. He testified that he had called Alpha to inquire whether they carried "Mastic" products, and that an employee named Alex confirmed that Alpha carried the product. Alex Coubrough, the Alpha salesman with whom Sneft spoke, testified in rebuttal. Although Coubrough's testimony was confused by a poor memory, it was nevertheless inconsistent and evasive. Furthermore it clearly diverged from the statements in his affidavit. In the opinion of the court, Alpha salesmen were engaged to some extent in blurring the distinction between Mastic—an operating division of Kusan—and Mastic—the Canadian subsidiary of Vytec. Given the corporate histories, this is not a difficult feat. To what extent this shoddy practice occurred, however, cannot be gleaned from the unsatisfactory evidence produced by Kusan.

In May of 1986, John Wetherell, Kusan's District Manager for the Northeast, discovered the Anden brochure which he forwarded to Robert Lonergan, general counsel for Kusan. Lonergan wrote to Mastic, Inc.'s Chairman and President to insist that Vytec cease using the "Mastic" name in promotional literature in the United States. John Taylor, Vice President of Mastic, Inc., responded, describing its use of the "Mastic Story" in its corporate brochures but denied any use of the word "Mastic" in promotional literature. In addition, it asked that Mastic Corp. produce copies of offending literature, but Mastic Corp. did not respond. Wetherell testified that he did not see any more corporate literature from Vytec until March 1987 when he saw the Vytec brochure. This he forwarded to Kusan's counsel, and, in October 1987, Kusan filed suit.

## DISCUSSION

■ The standard for determining whether a preliminary injunction should issue is familiar:

> The moving party must show (a) the possibility of irreparable injury, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions

going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting injunctive relief.

*Joseph Scott Co. v. Scott Swimming Pools, Inc.* 764 F.2d 62, 66 (2d Cir.1985) (citations omitted). In a trademark action where a plaintiff can show any likelihood that an appreciable number of potential purchasers are likely to be confused over the source of the goods as a result of a defendant's conduct, irreparable harm is presumed without more. *Id.* However, irreparable harm will not be presumed where the requisite consumer confusion can be shown but the plaintiff delayed in seeking the extraordinary relief of a preliminary injunction. *Citibank N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985). The rationale for this rule is obvious: if an aggrieved party rests on his rights, it is incongruous for him to ask a court to act swiftly and issue an injunction without which irreparable harm will result. Moreover, where the delay is significant a court is justified in denying a motion for a preliminary injunction on that basis alone. *Id.*

Kusan's delay in seeking a preliminary injunction defeats its motion. The evidence shows that John Wetherell, a Kusan district manager, discovered the Anden brochure in May of 1986, one and a half years before Kusan filed suit. Immediately upon seeing the Anden brochure, Kusan wrote to Vytec to demand that it halt its dissemination. Although Vytec's response denied that any of its promotional literature used the word "Mastic," it confirmed that "Mastic" is used throughout its corporate literature to describe Vytec's history in the vinyl siding business. The evidence also shows that thousands of the brochures were sent to the United States over a two year period beginning in 1985. Kusan attempts to explain the delay in asserting its trademark rights by arguing that after it sent its letter it did not come across any more brochures like the Anden brochure until March of 1987 when the same district manager saw the Vytek brochure. Wetherell's testimony suggests that Kusan simply assumed that its letter did the trick and convinced Vytec to cease using the Anden brochure. This assumption is not credible

in light of the letter from Vytec which in substance disagreed with Kusan's charge that the brochure was improper.

The Vytec brochure which Wetherell came upon in March 1987 contained almost the identical "Mastic Story" as did the Anden brochure, yet Kusan waited seven months before commencing this action. This subsequent delay, after the initial delay, suggests that Kusan does not truly fear the irreparable harm it attempts to impress upon the court.

*Citibank, supra,* involved a suit for trademark infringement by the New York City based banking giant against a Connecticut bank chartered under the name Citytrust. Citytrust opened a commercial lending office in Long Island in May 1984. It had advertised its plans in a trade journal in the summer of 1983 and in the general press on Long Island in December 1983. Not until June 1984 did Citibank learn firsthand that a Citytrust office opened on Long Island, and, even then, it did not commence action against Citytrust for at least ten weeks. On these facts, the Second Circuit squarely held that the delay alone undercut Citibank's claim of irreparable injury in seeking a preliminary injunction. *Id.* at 277.

Similar to the Kusan argument, Citibank contended that it was unable to verify Citytrust's plans to open an office on Long Island. Kusan's claim that it should not have to answer for a delay of over one year before filing suit because it did not learn of any more brochures from Vytec "strains credulity." *Id.* Indeed, the discovery of a Vytec brochure in March 1986 should have confirmed that Vytec had not ceased using the "Mastic Story" in its corporate literature in the United States. Nevertheless, Kusan waited another seven months before filing a suit.

Plaintiff's attempt to lessen the impact of *Citibank* by reliance on *Church of Scientology International v. Elmira Mission of the Church of Scientology,* 794 F.2d 38 (2d Cir.1986), is unavailing. That decision makes only a passing reference to *Citibank* and did not involve the issue of delay. Nevertheless, the plaintiff seizes on the Second Circuit's characterization of *Ci-*

*tibank* as involving "substantial delay". *Church of Scientology, supra* at 42. The delay in *Citibank* was ten weeks. Furthermore, *Church of Scientology* is a license case in which "the reasons for issuing a preliminary injunction for trademark infringement are more compelling than in the ordinary case," such as this one. *Id.* at 42.

Having determined that the plaintiff's delay in seeking preliminary injunctive relief defeats its claim that it is being irreparably harmed by the alleged infringement, it is unnecessary to address whether actual confusion is occurring or is likely to occur because the "Mastic Story" appears in Vytec brochures or because Vytec distributors fail to distinguish adequately between Mastic, Inc. of Canada and Mastic Corp. of America. It is also unnecessary to decide at this time whether "Mastic" has, through its long use by Kusan, acquired a secondary meaning.

It bears noting that the court finds the "Mastic Story" very confusing as to Vytec's former relationship with the Kusan division, Mastic Corporation. Vytec's persistence in setting out the "Mastic Story" only invites this sort of litigation, and it appears that the larger goal of using the brochures to introduce the manufacturer and its products to potential customers is not greatly advanced by extensive references to Mastic, however truthful.

## SANCTIONS

■ Vytec and Alpha move for sanctions on the ground that the Kusan, in its brief in support of its motion for a preliminary injunction, misrepresented the "Mastic Corp." trademark registration as appearing on the principal register when in fact it is on the supplemental registration. Certain legal implications flow from a mark's status on the register of the United States Patent and Trademark Office, including presumptive validity for marks appearing on the principal register.

Where Kusan incorrectly asserts that it owns the trademark "Mastic Corp.," No. 1,321,543, appearing on the principal register, it refers to exhibits in the complaint which are copies of the registrations. It is clear from the exhibits that Kusan is actually referring to the supplemental registra-

tion. When this error was brought to Kusan's attention it promptly filed a correction.

Not only does Kusan have a colorable claim to rights in the use of "Mastic" and "Mastic Corp." notwithstanding the status of its registrations, but its factual error appears completely inadvertent and did not mislead the court. The fact that copies of the actual registrations were appended to the complaint stand as truthful statements of the status of trademark registrations owned by Kusan and simultaneously negate any problem that the misstatement in the brief may have created. Rule 11 sanctions are not appropriate.

## CONCLUSION

The plaintiff's motion for a preliminary injunction and the defendants' motion for sanctions are DENIED.