**MOUNTAIN ROAD PROPERTIES, INC., d/b/a The Mountain Road Resort at Stowe**

v.

**Paul BATTAINI, individually, and Nancy Battaini, individually, d/b/a Burlington Dine Around Club and Charles Stewart, individually.**

Civ. No. 92–322.

United States District Court, D. Vermont.

Nov. 16, 1992.

Robert S. DiPalma, Paul, Frank & Collins, P.C., Burlington, Vt., for plaintiff.

David T. Austin, Sheehey, Brue, Gray & Furlong, Burlington, Vt., for defendant Portland Dine Around Club, Inc.

Donald J. Rendall, Jr., David T. Austin, Sheehey, Brue, Gray & Furlong, Burlington, Vt., for defendants Paul Battaini, Nancy Battaini, and dba/ Burlington Dine Around Club, Charles Stewart.

### ORDER

BILLINGS, District Judge.

On October 21, 1992, plaintiff moved pursuant to Fed.R.Civ.P. 65 and 15 U.S.C.

---

§ 1116 for a preliminary injunction barring defendants' use of plaintiff's registered service mark, "Dine Around," in any print or electronic promotion or advertising. Plaintiff also requests that defendants be enjoined from entering into any further joint ventures to use the mark. On October 30, 1992, defendants Portland Dine Around Club,[1] Paul Battaini, Nancy Battaini and Charles Stewart filed opposition. A hearing was held on October 30, 1992. Parties were given until November 6, 1992 to file additional memoranda. Both have done so.

Based on our conclusion that plaintiff's and defendants' common use of the term "Dine Around" will not result in the likelihood of confusion among consumers, plaintiff has not shown irreparable injury and its motion for a preliminary injunction is denied.

## Background

Plaintiff, a resort hotel in Stowe, Vermont, features a "Dine Around" plan in its vacation packages. The plan enables guests to eat at area restaurants that are not part of plaintiff's hotel. Previous owners of the Mountain Road Resort coined the phrase "Dine Around" in 1975. On July 17, 1987, plaintiff registered the phrase " 'Dine Around' Package Plan" with the Vermont Secretary of State. On September 12, 1989, plaintiff registered the mark with the United States Patent and Trademark Office.

Plaintiff uses the "Dine Around" mark in promotional materials and in advertisements in magazines, newspapers, and travel guides. Since 1984, plaintiff has spent more than $300,000 on advertising, most of which has included the "Dine Around" mark. In the past two years, plaintiff has by simple request succeeded in stopping two local businesses from using the phrase "Dine Around."

Plaintiff's guests come from throughout the United States, and from abroad; relatively few come from northern Vermont. Currently the "Dine Around" plan is available only to hotel guests, since plaintiff does not have in-house restaurant service. Plaintiff has indicated a possibility of expanding the plan to include more restaurants and perhaps to offer the "Dine Around" plan to the general public.

In the summer of 1992, defendants Paul and Nancy Battaini entered into a joint venture with defendant Charles Stewart to operate the "Burlington Dine Around Club." For a fee, members in the Burlington Dine Around Club receive a card that allows them to eat in participating restaurants at reduced prices. Defendants target residents of the Burlington area for membership. As part of the plan, the Burlington Dine Around Club provides marketing assistance and advertising to participating restaurants. The Burlington Dine Around Club is modeled after the Portland Dine Around Club, which Mr. Stewart has operated in the Portland, Maine area since February 1988.

The Battainis, apparently unaware of plaintiff's trademark, registered their name with the Vermont Secretary of State, initiated a marketing plan, and contracted with twenty-five restaurants located in Burlington, South Burlington, Essex Junction, Winooski, Shelburne, Middlebury, Stowe and Montpelier. To launch the venture, they have printed books, membership cards, fliers, and pre-printed envelopes bearing the words "Burlington Dine Around Club." The Battainis, who have invested approximately $10,000 in the venture,[2] planned to do the bulk of the marketing, promotion and advertising between autumn and the Christmas holidays. At the time of the hearing, the Battainis had sold approximately 500 memberships. They seek to sell 2,500 to 3,000 memberships.

In early October, plaintiff contacted defendants and asked them to cease using the

---

**1.** At a hearing held on October 30, 1992, plaintiff's claims against the Portland Dine Around Club, Inc. were dismissed for lack of personal jurisdiction.

**2.** At the hearing, Mr. Battaini indicated that he and his wife would probably have to invest an additional sum.

phrase "Dine Around." After defendants refused, plaintiff brought this action.

## Discussion

The Court may grant a preliminary injunction if the moving party shows "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

In the unique context of alleged trademark infringement, "irreparable harm" exists if "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused as to the source of the goods in question." *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 66 (2d Cir.1985) (quoting *McGregor–Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1130 (2d Cir.1979)).

The Court will use the factors enumerated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), to determine whether confusion is likely here. The eight *Polaroid* factors are: the strength of the plaintiff's mark; the degree of similarity between the two marks; the proximity of the services; the likelihood that the prior owner will enter the market in which the junior user operates; existence of actual confusion; whether defendants acted in good faith; the quality of defendants' product; and the sophistication of the buyers. *Id.*

The first factor, strength of the mark, "depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." *Hasbro*, 858 F.2d at 76 (quoting *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). The evidence shows that the purchasing public does not generally associate the term "Dine Around" with the Mountain Road Resort. Other entities, including one within the northern Vermont region, use the phrase. Consequently, the purchasing public is unlikely to mistake the Burlington Dine Around Club for the Mountain Road Resort's Dine Around Plan.

As for the second factor, plaintiff and defendants do not use the phrase "Dine Around" in a confusingly similar manner. Defendants' use of the phrase is embedded within a distinctive name, the "Burlington Dine Around Club." Plaintiff uses the term in connection with the vacation plans offered at its resort. Consequently, the purchasing public can distinguish the two, despite the common use of the phrase "Dine Around."

With regard to the third factor, the services offered by plaintiff are not sufficiently "proximate" to cause confusion. Plaintiff and defendants target different consumers. Most of plaintiff's guests come from out-of-state and are typically visiting Vermont for a relatively short period of time. Defendants' average customers are Burlington-area residents, able to frequent local restaurants. This distinction is illustrated by the different advertising done by the parties. Plaintiff advertises little in northern Vermont, but quite heavily nationally. Conversely, defendants' advertising focuses on the greater Burlington area.

Moreover, plaintiff and defendants offer distinct services, unlikely to be confused by consumers. Plaintiff's "Dine Around" plan is purchased in conjunction with lodging at the Mountain Road Resort. Defendants' plan is not sold with lodging and primarily offers discount dining to local residents. Because plaintiff and defendants neither target the same consumers nor offer a similar service, the possibility of confusion is minimal.

With regard to the fourth and fifth *Polaroid* factors, the likelihood that plaintiff will enter defendants' market [3] and "actual

---

**3.** Although Mr. Knox testified that expansion of the "Dine Around" plan was possible, the Court cannot find that this would result in a likelihood of confusion.

confusion," [4] the Court finds insufficient evidence upon which to base a conclusion. The sixth *Polaroid* factor, defendants' good faith, does not strongly point in either direction and is consequently not helpful.[5]

With regard to the seventh factor, an inferior product marketed by the junior user may injure the senior user's reputation. *See Hasbro* 858 F.2d at 78 (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)). Here, Mr. Knox testified that his resort plan emphasized quality and voiced his fear that defendants' discounted eating plan would somehow harm the reputation of the Mountain Road Resort. Nevertheless, in light of our conclusion that the nature of the services offered by plaintiff and defendants differ significantly, this is unlikely.

The final *Polaroid* factor, consumer sophistication, also indicates that confusion is not likely. Consumers of both plaintiff's and defendants' services are likely to consider and inquire about the services offered before making an actual purchase. Consequently, the purchasing public will have opportunity to distinguish between the two services.

After considering each of these factors, the Court concludes that there is not a sufficient likelihood of confusion among consumers to find that a likelihood of irreparable harm exists. Consequently, plaintiff's motion for a preliminary injunction is hereby DENIED.

SO ORDERED.

---

**4.** Although plaintiff makes much of Whiskers Restaurant's participation in both "Dine Around" plans, the Court does not view this as persuasive evidence of actual confusion or likelihood of confusion. Plaintiff only speculates that this dual membership is likely to cause confusion. Moreover, even if the type of confusion described by plaintiff should occur, it would not involve an "appreciable" number of consumers.

**5.** Because the service mark "Dine Around" had been registered, defendants had constructive notice of it. 15 U.S.C. § 1072. Nevertheless, the evidence shows that defendants were unaware of plaintiff's trademark. The Battainis registered their name with the Vermont Secretary of State. Moreover, Mr. Battaini testified that he had no knowledge of plaintiff's registration until he was notified by plaintiff's counsel.